IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| CARROLL C. MULLENS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. CIV-16-304-SPS |
| | ) | |
| NANCY A. BERRYHILL, | ) | |
| Acting Commissioner of the Social | ) | |
| Security Administration,[1] | ) | |
| | ) | |
| Defendant. | ) | |

## OPINION AND ORDER

The claimant Carroll C. Mullens requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). He appeals the Commissioner's decision and asserts the Administrative Law Judge ("ALJ") erred in determining he was not disabled. For the reasons set forth below, the Commissioner's decision is REVERSED and the case REMANDED to the ALJ for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such

---

[1] On January 23, 2017, Nancy A. Berryhill became the Acting Commissioner of Social Security. In accordance with Fed. R. Civ. P. 25(d), Ms. Berryhill is substituted for Carolyn W. Colvin as the Defendant in this action.

severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id*. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[2]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *see also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he

---

[2] Step one requires the claimant to establish that he is not engaged in substantial gainful activity. Step two requires the claimant to establish that he has a medically severe impairment (or combination of impairments) that significantly limits his ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or his impairment *is not* medically severe, disability benefits are denied. If he *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, he is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that he lacks the residual functional capacity ("RFC") to return to his past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given his age, education, work experience and RFC. Disability benefits are denied if the claimant can return to any of his past relevant work or if his RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

### Claimant's Background

The claimant was born March 2, 1969, and was forty-five years old at the time of the administrative hearing (Tr. 179, 342). He has a high school education, and has worked as a delivery route driver, welder, and car dealer (Tr. 184, 363). The claimant alleges he has been unable to work since an amended onset date of August 21, 2012, due to diabetes, high blood pressure, arthritis, and neuropathy (Tr. 69, 183).

### Procedural History

On August 21, 2012, the claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, and for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85 (Tr. 40, 124).[3] His applications were denied. ALJ J. Frederick Gatzke conducted an administrative hearing and determined that the claimant was not disabled in a written opinion dated August 4, 2014 (Tr. 40-52). The Appeals Council denied review, so the ALJ's written opinion represents the Commissioners' final decision for purposes of this appeal. *See* 20 C.F.R. §§ 404.981, 416.1481

### Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He found that the claimant had the residual functional capacity ("RFC") to perform sedentary work as

---

[3] The claimant's application for supplemental security income benefits is not in the record.

defined in 20 C.F.R. §§ 404.1567(a), 416.967(a), except that he required the intermittent opportunity to alternate sitting and standing approximately every forty-five minutes in addition to lunch and normal breaks (Tr. 43). The ALJ concluded that although the claimant could not return to his past relevant work, he was nevertheless not disabled because there was work he could perform in the national economy, *e. g.*, touch-up screener, document preparer, and semiconductor bonder (Tr. 50-52).

## Review

The claimant contends that the ALJ erred by failing to properly evaluate the opinions of treating physicians Dr. Vivek Khetpal and Dr. Nadia Ahktar. The Court agrees, and the decision of the Commissioner must therefore be reversed and the case remanded to the ALJ for further proceedings.

The ALJ found the claimant's diabetes, diabetic neuropathy, hypertension, obesity, and cervical degenerative changes were severe impairments (Tr. 42). The relevant medical evidence reveals that the claimant established care with Dr. Khetpal at the Heart and Medical Center in February 2013 (Tr. 271). Initial treatment consisted of a stress test and carotid ultrasound, both of which were normal (Tr. 264-67). At an appointment on March 7, 2013, the claimant reported severe neuropathy that prevented him from working (Tr. 260-63). Dr. Khetpal's physical examination was normal and he diagnosed the claimant with diabetes and labile hypertension (Tr. 260-63). At a follow-up appointment on November 25, 2013, the claimant reported intermittent, moderate back pain and radicular leg pain (Tr. 284-86). Dr. Khetpal noted the claimant had a slowed gait and decreased range of motion in his back and left hip (Tr. 284-86). Similar

examination findings were made in December 2013 and January 2014 (Tr. 274-83). The claimant transferred his care to Dr. Akhtar (also at the Heart and Medical Center) in March 2014 (Tr. 292-93). At this initial appointment, he reported neck pain and Dr. Akhtar noted recent imaging revealed degeneration at C6-C7 (Tr. 290-93). She further noted the claimant had a slowed gait and decreased range of motion in his back and left hip (Tr. 292, 305-06, 312-16).

Dr. Khetpal completed a Medical Source Statement ("MSS") on May 21, 2013, wherein he stated the claimant's diagnoses included severe osteoarthritis, diabetes, and hypertension; his symptoms included left shoulder pain; and that his prognosis was fair (Tr. 271-72). Dr. Khetpal opined that in an eight-hour workday, the claimant could sit sixty minutes at a time for a total of five or six hours, and could stand/walk ten minutes at a time for a total of two or three hours (Tr. 271). Additionally, he found the claimant required the ability to shift positions at will and needed to take unscheduled breaks for fifteen to twenty minutes at a time, but did not know how frequently unscheduled breaks would occur (Tr. 271). Dr. Khetpal further opined that the claimant could lift/carry less than ten pounds frequently, ten to twenty pounds occasionally, and could never lift/carry anything above fifty pounds (Tr. 272). He indicated the claimant had limitations in his ability to reach, handle, or finger, but did not specify such limitations (Tr. 272). Dr. Khetpal opined that the claimant would likely be absent from work more than four times per month as a result of his impairments or treatments, and concluded that he was incapable of working an eight-hour day, five days per week, on a sustained basis (Tr. 272).

Dr. Akhtar completed an MSS Medical Source Statement ("MSS") on April 4, 2014, wherein she stated the claimant's diagnoses included generalized osteoarthritis, hypertension, low back pain, hyperlipidemia, diabetes, and obesity; his symptoms included back pain, generalized pain, numbness, tingling, and fatigue; and that his prognosis was fair (Tr. 300-01). Dr. Akhtar noted the claimant experienced dizziness and drowsiness as side effects from his medications (Tr. 300). She opined that in an eight-hour workday, the claimant could sit fifteen minutes at a time for a total of three hours, and could stand/walk twenty minutes at a time for a total of three hours (Tr. 300). She also found the claimant required the ability to shift positions at will, lie down during the day, and take unscheduled breaks, noting the frequency and length of such unscheduled breaks were unpredictable (Tr. 300). Dr. Akhtar further opined that the claimant could lift/carry up to twenty pounds occasionally, but could never lift/carry anything above fifty pounds (Tr. 301). Additionally, she indicated that in an eight-hour workday, the claimant could use his hands for grasping, turning, or twisting objects thirty percent of the time; could use his fingers for fine manipulation thirty percent of the time; and could use his arms for reaching thirty percent of the time (Tr. 301). Dr. Akhtar opined that the claimant would likely be absent from work three or four times per month as a result of his impairments or treatments, and concluded that he was incapable of working an eight-hour day, five days per week, on a sustained basis (Tr. 301).

Dr. William Cooper performed a consultative examination of the claimant on November 2, 2012 (Tr. 235-41). Dr. Cooper found that the claimant experienced pain in his knees with range of motion testing, but had full range of motion (Tr. 237-38). He had

-6-

full grip strength in his hands and was able to perform both gross and fine tactile manipulation (Tr. 237). Dr. Cooper noted the claimant had full range of motion without tenderness in his cervical spine, thoracic spine, and lumbar-sacral spine (Tr. 237-38). Dr. Cooper diagnosed the claimant with diabetes, diabetic neuropathy, hypertension, osteoarthritis, and obesity (Tr. 237).

At the administrative hearing, the claimant testified that he experiences neuropathy in his feet relieved by alternating between sitting and standing (Tr. 351, 357). As to his back pain, the claimant said he gets relief by lying down, which he has to do at least every other day (Tr. 357). The claimant stated that he experiences no side effects with any of his medications (Tr. 360). As to specific limitations, the claimant testified that he could walk one-half of a block to a block before experiencing pain in his feet and back, could sit for twenty to thirty minutes before needing to alternate positions, could stand for ten minutes at a time, and could lift about twenty pounds (Tr. 359).

In his written opinion, the ALJ summarized the claimant's testimony and most of the medical evidence. The ALJ assigned very little weight to the opinions of Dr. Khetpal and Dr. Akhtar, finding the limitations they assessed were not supported by the medical evidence of record, including their own treatment notes (Tr. 48). In support of his conclusion, the ALJ noted that neither physician instructed the claimant to lie down or recline, their opinion regarding the number of days the claimant would be absent was overly speculative, and they simply referenced the claimant's subjective symptoms as support for their opinions (Tr. 48). As to Dr. Akhtar's opinion specifically, the ALJ noted she supported her opinion by referring to the claimant's medication side effect of

drowsiness, but that the claimant testified he experienced no side effects after a medication modification (Tr. 48). The ALJ then rejected the State Agency physicians' opinion that the claimant had no severe impairments (Tr. 48). He summarized Dr. Cooper's consultative exam findings, but did not assign any specific weight (Tr. 46).

The medical opinions of treating physicians such as Dr. Khetpal and Dr. Akhtar are entitled to controlling weight if "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "consistent with other substantial evidence in the record." *Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004), *quoting Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003). When a treating physician's opinion is not entitled to controlling weight, the ALJ must determine the proper weight to give it by considering the following factors: (i) the length of the treatment and frequency of examinations, (ii) the nature and extent of the treatment relationship, (iii) the degree of relevant evidence supporting the opinion, (iv) the consistency of the opinion with the record as a whole, (v) whether the physician is a specialist, and (vi) other factors supporting or contradicting the opinion. *Watkins*, 350 F.3d at 1300-01, *citing Drapeau v. Massanari,* 255 F.3d 1211, 1213 (10th Cir. 2001). If the ALJ decides to reject a treating physician's opinion entirely, he is required to "give specific, legitimate reasons for doing so." *Id.* at 1301. In sum, it must be "clear to any subsequent reviewers the weight the [ALJ] gave to the treating source's medical opinion and the reasons for that weight." *Id.* at 1300, *citing* Soc. Sec. Rul. 96-2p, 1996 WL 374188, at *5 (July 2, 1996).

The opinions of Dr. Khetpal and Dr. Akhtar both contained functional limitations that the ALJ rejected, in part, because they were inconsistent with each physician's own

treatment notes (Tr. 48). The ALJ found that neither physician instructed the claimant to lie down or recline during the day; the claimant did not complain of exacerbated symptoms with inability to function multiple days per month; the claimant's physical examinations were entirely normal at times; and they assessed stable findings of intact cranial nerves, motor and sensory function, reflexes, gait and coordination (Tr. 48). In making such findings, however, the ALJ ignored that beginning in November 2013 and continuing through May 2014 every physical examination (whether completed by Dr. Khetpal or Dr. Akhtar) revealed that the claimant had a slowed gait and decreased range of motion in his back and left hip (Tr. 274-86, 290-93, 305-16). This is clearly relevant because the claimant's back impairment has a direct effect on his ability to stand, walk, and sit. Thus, the ALJ erred by failing to discuss *all* of the evidence related to the claimant's impairments and citing only evidence favorable to his finding of non-disability. *See Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir. 2007) ("An ALJ is not entitled to pick and choose through an uncontradicted medical opinion, taking only the parts that are favorable to a finding of nondisability."), *citing Robinson v. Barnhart*, 366 F.3d 1078, 1083 (10th Cir. 2004) and *Hamlin v. Barnhart*, 365 F.3d 1208, 1219 (10th Cir. 2004).

Furthermore, the ALJ failed to properly clarify the inconsistencies in the evidence, and additionally failed to provide any analysis in relation to the other pertinent factors set forth above (Tr. 47-48). This was error. *See, e.g., Langley,* 373 F.3d at 1123 ("Because the ALJ failed to explain or identify what the claimed inconsistencies were between Dr. Williams's opinion and the other substantial evidence in the record, his reasons for

rejecting that opinion are not 'sufficiently specific' to enable this court to meaningfully review his findings."), *citing Watkins,* 350 F.3d at 1300. *See also Wise v. Barnhart,* 129 Fed. Appx. 443, 447 (10th Cir. 2005) ("The ALJ also concluded that Dr. Houston's opinion was 'inconsistent with the credible evidence of record,' but he fails to explain what those inconsistencies are.") [citation omitted].

Because the ALJ failed to properly evaluate the opinions of treating physicians Dr. Khetpal and Dr. Akhtar, the decision of the Commissioner must therefore be reversed and the case remanded to the ALJ for further analysis. If such analysis results in any changes to the claimant's RFC, the ALJ should re-determine what work the claimant can perform, if any, and ultimately whether he is disabled.

## Conclusion

In summary, the Court FINDS that correct legal standards were not applied by the ALJ, and the Commissioner's decision is therefore not supported by substantial evidence. The decision of the Commissioner decision is accordingly hereby REVERSED and the case REMANDED for further proceedings consistent herewith.

**DATED** this 27th day of February, 2018.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**